IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MCDONALD'S CORPORATION, | ) | |
| MCDONALD'S USA LLC, AND | ) | |
| TENAJ, LC, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Serve: | ) | |
| Registered Agents (Respectively): | ) | |
| | ) | |
| Prentice-Hall Corp. System | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO  65101 | ) | |
| | ) | |
| CSC Lawyers Incorporating Service Co. | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO  65101 | ) | |
| | ) | |
| Lawrence B. Andreatta | ) | |
| 230 S. Bemiston, Suite 1000 | ) | |
| Clayton, MO  63105 | ) | |

**COMPLAINT**

COMES NOW Plaintiff Barbara Johnson and for her Complaint of employment discrimination on the basis of her sex, female, and of sexual harassment under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, states as follows:

**PARTIES**

1. Plaintiff Barbara Johnson is a female resident of the State of Missouri who was employed by Defendants in St. Louis, Missouri at McDonald's Restaurant, 9131 W. Florissant, St. Louis, MO 63136.

2. Defendant McDonald's Corporation is a Delaware corporation that has its principal place of business in Illinois and operates restaurants in all 50 states, including Missouri. Nationally, McDonald's Corporation (hereinafter, "McDonald's Inc.") employs over 200,000 employees. At all relevant times, McDonald's Corporation employed Plaintiff under Title VII.

3. Defendant McDonald's USA, LLC is a Delaware limited liability company that has its principal place of business in Illinois, and operates in all 50 states, including Missouri. Nationally, McDonald's USA, LLC (hereinafter "McDonald's USA") employs over 300,000 employees. At all relevant times, McDonald's USA employed Plaintiff under Title VII.

4. Defendant Tenaj, LC, LLC d/b/a "McDonald's" is a limited liability company that operates the McDonald's restaurant located at 9131 W. Florissant, St. Louis, MO 63136, in addition to other McDonald's restaurants in the St. Louis metro area. At all relevant times, Defendant Tenaj, LC (hereinafter "Tenaj") employed more than 15 employees for at least 20 workweeks at the facility at which Plaintiff worked. At all times relevant, Tenaj employed Plaintiff under Title VII.

5. Defendants McDonald's USA and McDonald's Inc. (together, "McDonald's Corporate Defendants" or "McDonald's") contract with franchisees to jointly operate McDonald's restaurants throughout Missouri, including Defendant Tenaj.

6. The McDonald's Corporate Defendants tightly control the working conditions of employees at McDonald's franchised restaurants, including with respect to the work environment and reporting and investigating sexual harassment, including at restaurants operated by Defendant Tenaj.

7. Together, all Defendants jointly operated the McDonald's restaurant at 9131 W. Florissant, St. Louis, MO 63136, during the relevant period and jointly employed all workers there, including Plaintiff and her managers.

8. Plaintiff Barbara Johnson wore a McDonald's uniform, worked at a McDonald's restaurant, and served McDonald's food.  Nobody told her she did not work for McDonald's.  Plaintiff reasonably believed that she was employed by McDonald's Corporate Defendants.

9. The McDonald's Corporate Defendants are liable for the acts of Defendant Tenaj because Tenaj was the apparent agent of McDonald's Corporate Defendants.

10. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all times relevant herein the agent, servant, employee, and/or representative of the other Defendants and was acting, at least in part, within the course and scope of such relationship and that each and every Defendant herein is jointly and severally responsible and liable to Plaintiff for the damages hereinafter alleged.

## JURISDICTION AND VENUE

11. Jurisdiction of this court is founded upon 28 U.S.C. §1331.

12. Venue is proper under 28 U.S.C. §1391(b) because Plaintiff was employed by the Defendant in the Eastern District of Missouri at all relevant times.

13. Plaintiff has satisfied the administrative prerequisites to suit under Title VII.  On or about September 15, 2018, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  On September 30, 2020 the EEOC issued to Plaintiff a Notice of Right to Sue, and this lawsuit is filed within ninety days of its receipt.

## ALLEGATIONS

14. Plaintiff Barbara Johnson started work at Defendants in January 2018 as a crew member.

15. She earned $7.50 per hour.

16. Although she was only 18 when she started working at Defendants, Barbara had three years of experience in fast food. Her previous work experience made her an ideal candidate for McDonald's.

17. Throughout her employment with Defendants, Barbara only received positive feedback on her work performance. Defendants never gave her verbal or written discipline.

18. At all relevant times, Plaintiff Barbara Johnson met Defendants' legitimate performance expectations.

19. On Barbara's first day on the job, the whole crew waited by the front as she arrived. A male crew member named Keon (Last Name Unknown or "LNU") said, in a suggestive manner, "can I take her on the *tour* of the store? I want to show her where we take all the new people." As he spoke, Keon looked up and down Barbara's body.

20. The whole crew laughed out loud at Keon's remark, including the General Manager, Jasmine (Last Name Unknown, or "LNU"). Barbara felt humiliated by the exchange.

21. Throughout that day, Keon continued to make sexually harassing comments towards Barbara. For instance, while Barbara worked up front, Keon asked her, "You need some catchup or barbeque sauce? Because *you know* I could take you *to the back*." He licked his lips and again scanned her body as he said this.

22. Intimidated and uncomfortable, Barbara did her best to ignore and avoid Keon.

23. The next shift that Barbara worked with Keon, he continued to make sexually explicit comments. Barbara asked Keon to make a McChicken sandwich for an order. In response, Keon grabbed his genitals and said, "I got your McChicken right here." Barbara said, "never mind," and walked away.

4

24. Keon made unwanted advances and perverted remarks whenever he worked with Barbara. Throughout her employment with Defendants, he called her "sweet cheeks," "sexy," and told her that her "lips looked sexy."

25. Shift managers, including Nathan (Last Name Unknown, or "LNU) overheard Keon's comments.

26. Instead of talking to Keon or Barbara about the comments, the shift managers, including Nathan, laughed at or ignored Keon's sexually harassing comments towards Barbara.

27. Because of her new employment, Barbara did not feel secure reporting Keon. At the time, Barbara was a homeless teen and she could not risk losing her job with Defendants.

28. Defendants never trained Barbara on what behavior constituted sexual harassment. Defendants did not train or inform her that employees who engaged in sexually harassing behavior would face corrective action or termination. Additionally, Defendants never told Barbara to whom she could report sexual harassment safely or what she should do if she experienced sexual harassment.

29. Furthermore, because her General Manager laughed at Keon's sexually harassing comments, Barbara did not believe Defendants would take corrective action against their employees for sexual harassment.

30. Furthermore, Barbara feared Defendants would retaliate against her if she reported sexual harassment and the harassment would increase or she would face termination.

31. Keon was not the only employee of Defendants who sexually harassed Barbara.

32. Shortly after her hire, a shift manager named Nathan LNU started at Barbara's store.

33. As a shift manager, Nathan LNU directed the crew, wrote employees up for disciplinary issues, and managed staffing needs.

34. When Barbara met Nathan he stared at her body. As he looked at her, Nathan told Barbara, "You have a nice body," and "You thick in all the right places." Nathan's gaze and comments made Barbara feel sexualized, uncomfortable, and embarrassed.

35. Scared, Barbara tried not to react.

36. After she met Nathan, Barbara asked Jasmine, the General Manager, to switch her shifts. Barbara hoped she could avoid Nathan and Keon's harassment, and keep her job, if she worked a different shift.

37. After about a week on a different shift, Jasmine put Barbara back on the schedule with Keon and Nathan.

38. Once she was back on his shift, Nathan told Barbara, "I got my girl back."

39. After Jasmine put Barbara back on Nathan's shift, his sexual harassment of Barbara intensified. His comments and behavior grew more aggressive and explicit, and culminated with physical assault.

40. Nathan repeatedly made sexually explicit remarks to Barbara. Among other things, he told her:

- "Your lips look so juicy and wet,"
- "You look nice and thick in your uniform; it fits in all the right places,"
- "Your shirt is hugging your titties,"
- "You would look nice on top of me," and
- "Your boobs would look good when I'm screwing you."

41. During her last shift, Nathan grabbed Barbara's breasts while she worked.

6

42. On that day, Barbara went to the back of the store to get some sauces. Her job duties included restocking sauces as needed. To walk to the back of the store, Barbara had to walk past the managers' office.

43. As she walked past the office, Nathan saw Barbara. He followed her to the back of the store, and walked up behind her and put his hands on her breasts.

44. Barbara said, "Why are you touching me? You're not supposed to be touching me."

45. Nathan did not respond, only looked at her, leered, and smiled.

46. Barbara felt sick to her stomach. She clocked out and went home before her shift ended.

47. Barbara felt she had no choice but to quit. She could not go back to the store after Nathan sexually assaulted her.

48. That day, Barbara called Jasmine and told her that she needed to quit. Jasmine asked why and Barbara told her that she felt very uncomfortable. Jasmine did not inquire further.

49. Defendants knew or had reason to know that Plaintiff Barbara Johnson was the victim of sexual harassment and discrimination and failed to investigate.

50. Defendants constructively discharged Plaintiff mere weeks after her hire.

## **SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

51. Plaintiff Barbara Johnson re-alleges and reasserts allegations listed in paragraphs 1-45.

52. Defendants, by their actions and failure to act, including but not limited to the conduct described above, discriminated against Plaintiff on account of her sex in violation of the Title VII of the Civil Rights Act of 1964, as amended.

53. Plaintiff experienced discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign. Plaintiff's decision to resign was reasonable given the totality of the circumstances.

54. As a result of Defendants' actions and failures to act described herein, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

55. As a result of Defendants' actions and failures to act described herein, Plaintiff has suffered garden variety emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

56. Defendants' conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and as such, warrants an award of punitive damages in such sum as will serve to punish Defendants and to deter them and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendants for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

## **HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

57. Plaintiff Barbara Johnson re-alleges and reasserts allegations listed in paragraphs 1-45.

58. While Plaintiff was employed by Defendants, she was subjected to unwelcome harassment based on her sex.

59. Defendants' misconduct and harassment, as set forth herein, had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

60. Plaintiff's sex was a motivating factor in Defendants' harassment of her.

61. The harassment Defendants subjected Plaintiff to was offensive, created an abusive work environment, and affected the terms and conditions of Plaintiff's employment.

62. Nathan LNU, a shift manager, had the power to discipline Plaintiff and other employees. Nathan witnessed Keon's harassment of Plaintiff and did nothing. Then Nathan himself sexually harassed Plaintiff.

63. Jasmine LNU, General Manager, witnessed Keon harassing Plaintiff and did nothing. Jasmine knew or had reason to know that Nathan sexually harassed Plaintiff.

64. Defendants, by and through their agents, knew or should have known of the harassment and failed to take appropriate remedial action.

65. Plaintiff experienced sexual harassment so intolerable that a reasonable person in the same position would have felt compelled to resign. Plaintiff's decision to resign was reasonable given the totality of the circumstances.

66. As a result of Defendant's harassment of Plaintiff and the failure of Defendants to take prompt and effective remedial action to stop the harassment and hostile work environment, as alleged herein, Plaintiff has suffered lost wages and benefits of employment.

67. As a result of Defendant's harassment of Plaintiff and the failure of Defendant to take prompt and effective remedial action to stop the harassment and hostile work environment, as alleged herein, Plaintiff has suffered emotional distress and mental anguish.

68. As a result of Defendants' harassment of Plaintiff and the failure of Defendant to take prompt and effective remedial action to stop the harassment and hostile work environment, as alleged herein, Plaintiff has incurred attorneys' fees and costs of litigation.

69. Defendants' conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff to work in an environment free of harassment based on sex and as such, warrants an award of punitive damages in such sum as will serve to punish Defendants and to deter them and others from engaging in further sex harassment.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendants for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

Respectfully submitted,

SEDEY HARPER WESTHOFF, P.C.

*/s/ Claire Bruner-Wiltse*

_____

Benjamin F. Westhoff, #53047MO
Claire Bruner-Wiltse, #69434MO
2711 Clifton Avenue
St. Louis, MO 63139
314-773-3566
314-773-3615 (fax)
bwesthoff@sedeyharper.com
cbruner-wiltse@sedeyharper.com